1  **Stuart B. Wolfe (SBN 156471)**
   sbwolfe@wolfewyman.com
2  **Brian H. Gunn (SBN 192594)**
   bhgunn@wolfewyman.com
3  **WOLFE & WYMAN LLP**
   **2175 N. California Blvd., Suite 415**
4  **Walnut Creek, California 94596-3579**
   **Telephone:  (925) 280-0004**
5  **Facsimile:   (925) 280-0005**

6  **Attorneys for Defendant**
   **FIRST FRANKLIN FINANCIAL CORPORATION; MERRILL LYNCH**
7  **BANK AND TRUST CO.; ELECTRONIC REGISTRATION SYSTEMS, INC.;**
   **and LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE FOR**
8  **MERRILL LYNCH MORTGAGE INVESTORS TRUST 2007-3**

9             **UNITED STATES DISTRICT COURT**

10           **EASTERN DISTRICT OF CALIFORNIA**

11                **SACRAMENTO DIVISION**

| | |
|---|---|
| 12  EMMA LEE, an individual, | Case No. _____ |
| 13              Plaintiff, | **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §** |
| 14  v. | **1441(b)** |
| 15  FIRST FRANKLIN FINANCIAL CORPORATION, a Delaware | **[FEDERAL QUESTION]** |
| 16  Corporation, MERRILL LYNCH BANK AND TRUST CO., a New Jersey | |
| 17  Corporation, MORTGAGE ELECTRONIC REGISTRATION | |
| 18  SYSTEMS, INC., a Delaware Corporation, LASALLE BANK | |
| 19  NATIONAL ASSOCIATION AS TRUSTEE FOR MERRILL LYNCH | |
| 20  MORTGAGE INVESTORS TRUST 2007-3, CAL-WESTERN | |
| 21  RECONVEYANCE CORPORATION, AS TRUSTEE; and DOES 1 through 50, | |
| 22  inclusive, | |
| 23              Defendants. | |
| 24 | |

Attorneys & Counselors At Law
WOLFE & WYMAN LLP

25       TO THE CLERK OF THE ABOVE ENTITLED COURT:

26       PLEASE TAKE NOTICE THAT Defendants First Franklin Financial

27  Corporation; Merrill Lynch Bank and Trust Co.; Electronic Registration Systems,

28  Inc.; and Lasalle Bank National Association as Trustee for Merrill Lynch Mortgage

                                    1

1  Investors Trust 2007-3 (collectively "the First Franklin Defendants") hereby remove

2  to this Court the state court action described below pursuant to 28 U.S.C. § 1441(b)

3  *et seq.*:

4      1.    On June 20, 2009, as action was commenced in the Superior Court of

5  the State of California in and for the County of San Joaquin, Stockton Division,

6  entitled Emma Lee v. First Franklin Financial Corporation, et al., as Case number

7  39-2009-00202104-CU-FR-STK.  A true and correct copy of the Complaint is

8  attached hereto as Exhibit A.

9      2.    The first date upon which service was effected on any of the defendants

10  was January 28, 2009, when First Franklin was served with a copy of the Summons

11  and Complaint.  This notice of removal is timely under 28 U.S.C. § 1446(b) because

12  it was filed by February 27, 2009, which is within 30 days of when the first

13  defendant was served with a copy of the Summons and Complaint.

14      3.    This action is a civil action of which this Court has original jurisdiction

15  under 28 U.S.C. § 1331, and is one which  may be removed to this Court by the First

16  Franklin Defendants pursuant to the provisions of 28 U.S.C. § 1441(b) in that it

17  arises under, among other Federal laws, the Real Estate Settlement Procedures Act of

18  1974 (12 U.S.C. §2601).  Supplemental jurisdiction exists with respect to any

19  remaining claims pursuant to 28 U.S.C. § 1367.

20      4.    The United States District Court for the Eastern District of California

21  has jurisdiction in this civil action as the real property that is the subject of the

22  Complaint is located in the City of Mountain House and County of San Joaquin.

23  Moreover, the Superior Court of California for the County of San Joaquin is located

24  within the Eastern District of California.  (*See* 28 U.S.C. § 84(a)).  Thus venue is

25  proper in this Court because it is the "district and division embracing the place where

26  such action is pending." 28 U.S.C. § 1441(a).

27  ///

28  ///

WOLFE & WYMAN LLP
Attorneys & Counselors At Law

**NOTICE OF REMOVAL OF ACTION**

S:\Matters\First Franklin (1420)\260 (Lee)\Pleadings\Notice of Removal of Action.doc

5. The Division to which this civil action should be assigned is the Sacramento Division because the location of the real property that is the subject of this action is in the City of Mountain House and County of San Joaquin.

6. Pursuant to 28 U.S.C. § 1446(a), the First Franklin Defendants filed this Notice of Removal in the District Court of the United States for the District and Division within which the state court action is pending.

7. Pursuant to 28 U.S.C. § 1446(a), the First Franklin Defendants hereby attach as Exhibit B, true and correct copies of process, pleadings and orders served upon the First Franklin Defendants in the state court.

8. Pursuant to 28 U.S.C. § 1446(d), the First Franklin Defendants will promptly give written notice of the removal to all adverse parties and will file a copy of the notice with the clerk of the San Joaquin County Superior Court.

9. WHEREFORE, the First Franklin Defendants hereby remove San Joaquin County Superior Court Case number 39-2009-00202104-CU-FR-STK to the United States District Court for the Eastern District of California.

DATED: February 27, 2009    WOLFE & WYMAN LLP

By:
STUART B. WOLFE
BRIAN H. GUNN
Attorneys for **Defendant**
**FIRST FRANKLIN FINANCIAL
CORPORATION; MERRILL LYNCH
BANK AND TRUST CO.; ELECTRONIC
REGISTRATION SYSTEMS, INC.; and
LASALLE BANK NATIONAL
ASSOCIATION AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE
INVESTORS TRUST 2007-3**

WOLFE & WYMAN LLP
Attorneys & Counselors At Law

NOTICE OF REMOVAL OF ACTION
S:\Matters\Home Loan Services, Inc. (1385)\096 (Lee)\Pleadings\Notice of Removal of Action.doc

Wolfe & Wyman LLP
EXHIBIT "**A**"

M31-14

1   LAWRENCE P. RAMIREZ, (State Bar No. 141550)
    HENRY CHUANG, (State Bar No. 250628)
2   THE LITIGATION LAW GROUP
    111 North Market Street, Suite 1010
3   San Jose, CA 95113
    Telephone:  (408) 971-1119
4   Facsimile:  (408) 971-1129

FILED
SUPERIOR COURT-STOCKTON

'09 JAN 20 AM 11: 02

RO _ _ _ JUNQUEIRO, CLERK

BY _____
          DEPUTY

#45112 $350

5   Attorneys for Plaintiff
    EMMA LEE

6
    THIS CASE HAS BEEN ASSIGNED TO
    JUDGE LESLEY D. HOLLAND IN DEPARTMENT 13
7   FOR ALL PURPOSES INCLUDING TRIAL

    SUPERIOR COURT OF CALIFORNIA

8   IN AND FOR THE COUNTY OF SAN JOAQUIN

9   UNLIMITED CIVIL CASE

10  EMMA LEE, an individual,                    Case No.:   39-2009-00202104-CU-FR-STK

11                  Plaintiff,

12      vs.                                      COMPLAINT FOR VIOLATION OF
                                                 BUSINESS AND PROFESSIONS CODE
13                                               SECTION 17200, VIOLATION OF
                                                 CALIFORNIA CIVIL CODE SECTION
14  FIRST FRANKLIN FINANCIAL                     2923.5, VIOLATION OF REAL ESTATE
    CORPORATION, a Delaware Corporation,         SETTLEMENT PROCEDURES ACT OF 1974
15  MERRILL LYNCH BANK AND TRUST CO.,            (12 USC§2601) , VIOLATION OF TRUTH IN
    a New Jersey Corporation, MORTGAGE           LENDING ACT (12 CFR §226), FRAUD,
16  ELECTRONIC REGISTRATION SYSTEMS,             BREACH OF IMPLIED COVENANT OF
    INC., a Delaware Corporation, LASALLE        GOOD FAITH AND FAIR DEALING,
17  BANK NATIONAL ASSOCIATION AS                 CONVERSION, QUIET TITLE, FRAUD IN
    TRUSTEE FOR MERRILL LYNCH                     THE INDUCEMENT, UNFAIR BUSINESS
18  MORTGAGE INVESTORS TRUST 2007-3,             PRACTICES, BREACH OF FIDUCIARY
    CAL-WESTERN RECONVEYANCE                     DUTY, DEFAMATION, WRONGFUL
19  CORPORATION, AS TRUSTEE; and DOES 1          FORECLOSURE, CIVIL CONSPIRACY,
    through 50, inclusive,                       AIDING AND ABETTING,
20                                               UNLAWFUL JOINT VENTURE,
                                                 INJUNCTIVE RELIEF, OTHER EQUITABLE
21                  Defendants                   RELIEF

22

23      Plaintiff, EMMA LEE, by its attorney, for its causes of actions against defendants FIRST

24  FRANKLIN FINANCIAL CORPORATION, a Delaware Corporation,

25

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1

MERRILL LYNCH BANK AND TRUST CO., A New Jersey Corporation, MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, LASALLE

BANK NATIONAL ASSOCIATION AS TRUSTEE FOR MERRILL LYNCH MORTGAGE

INVESTORS TRUST 2007-3, CAL-WESTERN RECONVEYANCE CORPORATION, AS

TRUSTEE; and DOES 1 through 50, inclusive (hereinafter collectively known as "Defendants")

alleges the following, on information and belief:

## PARTIES

1.    EMMA LEE (hereinafter "Lee") is an individual, residing in Santa Clara County

at all times mentioned herein.

2.    Upon information and belief, Defendant FIRST FRANKLIN FINANCIAL

CORPORATION, ("FFFC"), at all times mentioned herein, was a Delaware corporation doing

business in the State of California.

3.    Upon information and belief, Defendant MERRILL LYNCH BANK AND

TRUST CO., ("MERRILL LYNCH"), at all times mentioned herein, was a New Jersey

corporation doing business in the State of California.

4.    Upon information and belief, Defendant MORTGAGE ELECTRONIC

REGISTRATION SYSTEMS, INC., ("MERS"), at all times mentioned herein, was a Delaware

corporation doing business in the State of California.

5.    Upon information and belief, Defendant LASALLE BANK NATIONAL

ASSOCIATION AS TRUSTEE FOR MERRILL LYNCH MORTGAGE INVESTORS TRUST

2007-3, ("LASALLE"), at all times mentioned herein, was doing business in the State of

California.  The form of this business entity is unknown at this time.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

2

6.    Upon information and belief, Defendant CAL-WESTERN RECONVEYANCE CORPORATION, as Trustee, at all times mentioned herein, was doing business in the State of California. The form of this business entity is unknown at this time.

7.    Plaintiff is ignorant of the true names and capacities of Defendants sued as DOES 1-50, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

8.    Plaintiff is informed and believes, and based on information and belief, alleges that at all times mentioned in this complaint Defendants were agents, servants, partners and/or employees of co-defendants, and in doing the actions mentioned below were, unless otherwise alleged, within the course and scope of their authority as such agent, servant, partner, and/or employee with the permission and consent of co-defendants.

9.    Any allegations about acts of any corporate or other business defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

10.    Plaintiff believes and is informed and, on that basis alleges, that each of said Defendants, were in some manner legally responsible for the unlawful actions, unlawful policies, and unlawful practices, complained of herein. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations when the same have been ascertained.

11.    Venue and jurisdiction is proper in this court because injury and damage to Plaintiff occurred in its jurisdictional area, the property is located in this jurisdictional area and the unlawful practices were committed in this jurisdictional area.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

3

## GENERAL ALLEGATIONS

12.     *This action is brought against Defendants, who engaged in fraud, breach of* fiduciary duty, conversion, defamation, wrongful foreclosure, and other illegal and wrongful acts under the rubric of unfair business practices.

13.     Defendants are mortgage lenders.  Defendants residential lending business model consists of making as many subprime residential loans, or loans made to borrowers with limited or impaired credit.

14.     Defendants did business as a wholesale lender.  That is, mortgage brokers, under contracts with Defendants and working closely with Defendants sales representatives, originated loans which were underwritten by Defendants.

15.     Defendants sold a majority of their residential subprime loans to the secondary market, that is, third-party investors or qualifying special-purpose entities that issue interest-bearing securities representing the loans interest stream.  After selling the loans for securitization or to third-party investors, Defendants typically must repurchase those loans only in limited circumstances, for instance, in the event of documentation errors, underwriting errors, fraud, or early payment defaults.

16.     While Defendants claimed to maintain underwriting guidelines that assessed the ability of the Plaintiff to repay debt, they purposefully relaxed their underwriting guidelines and sold a risky loan product to Plaintiff to increase their loan origination volume.  Defendants underwriting standards eventually grew so lax that in many instances, its underwriters took no meaningful steps to determine whether Plaintiff could actually repay a loan for the purpose of funding higher loan volumes for leveraged returns.

17.    Defendants violated and ignored Section 226 of the Truth In Lending Act (also commonly referred to as Regulation Z and 12 CFR Section 226).   Defendants failed to examine Plaintiffs current and expected  "Repayment ability" and failed to clearly and conspicuously disclose Plaintiff key provisions of Plaintiff's mortgage, including but not limited to such details as the eventually reset interest rate, specific loan terms, and the total dollar amount the mortgage will cost over time.

18.    Defendants violated the Real Estate Settlement Procedures Act of 1974 (12 USC § 2601) ("RESPA"), when it provided undisclosed financial incentives, fees, payments and other "things of value" to its agents, account executives, loan officers and brokers marketing and selling its product, said payment and incentives constituting a prohibited kickback, referral fee or other "things of value" in violation of Section 8 of RESPA.

19.    Defendants business model of making loans for quick resale rendered Defendants indifferent to whether Plaintiff could afford the loan beyond Defendants exposure period to risk. This risk period was in effect only as long as it was required to sell the loan to the secondary market.  This indifference translated into Defendants maximizing loan resale profits through funding Plaintiff's unfair and exceedingly risky loan products, unfair underwriting practices, deceptive loan sales practices through its own conduct and the conduct of mortgage brokers, and unsuspecting Plaintiff facing unfair and deceptive Defendants loans that the borrower could not afford.

20.    Defendants focused on creating unduly risky loans for profitability. Defendants received fees not only for originating loans but reselling pre-packaged loan bundles or securities at a guaranteed rate of return.  Due to Defendants compensation structure, and policies, employees, brokers, loan officers, and related Defendants were encouraged to steer Plaintiff into

a costly mortgages with higher interest rates and for a larger amount in order to maximize their own profits. Defendants and their agents and brokers steered Plaintiff, who had a good credit score and income into loans with high interest rates. To support Plaintiff's application for the unduly risky loan, agents and brokers overstated Plaintiff's income and/or ability to pay, and inflated the appraised value of the applicant's home. The Defendants, intentionally or recklessly, failed to verify or audit the information and avoided implementing reasonable measures that would have prevented or limited these fraudulent practices.

21.    To further increase Defendants revenue, Plaintiff's loan was designed not for long-term viability, but for short-term refinancing, and brokers and agents promised Plaintiff could refinance before the loan became unaffordable when the introductory rate expired. But this business model, promoting serial refinancing, relied on a perpetual increase in Plaintiff's home valuation.

22.    Defendants also attempted to increase their profit margins and the amount loans generated by creating residential mortgage loans ("RML") and other loans in the form of adjustable rate mortgages ("ARMs") that Defendants sold to Plaintiff. This ARM was a mortgage that contained a low introductory rate and a rate for the first period of the loan. This first period was anywhere from one to five years. After the fixed period, the interest rate of the ARM would adjust, generally substantially upwards, and would increase monthly payments that the Defendants knew the Plaintiff could not pay.

23.    Further, Defendants generated more revenue by having a prepayment provision on the Plaintiff's loan. This provision was a condition that became active when Plaintiff attempted to refinance the loan. Due to the fact that the prepayment penalty provision would be active longer than the introductory rate or the fixed period, Defendants knew that the borrower

would be forced to refinance and pay the prepayment penalty or that Plaintiff would be unable to refinance his property, causing his property to be foreclosed upon. To encourage Plaintiff to take the loan with the prepayment penalty, Defendants promised that the prepayment penalty would be waived if the Plaintiff refinanced with the Defendants even though the Defendants did not have the power to waive this provision since the penalty guaranteed a return on the pre-packaged security sales.

24.    To further increase profit margins, Defendants worked with appraisers and other agents to inflate the value of Plaintiff's home. Through Defendants policies of choosing the appraiser and hiring only appraisers that would appraise the value of the property at whatever the Defendants loan called for, Defendants could increase the property value and therefore increase the loan amount subsequently raising their fees in the process. By increasing the value of the loan, Defendants would be able to resell the RML at a higher price to increase their profit margins.

25.    The Defendants induced Plaintiff to accept Defendants risky loan product by: (1) failing to clearly and conspicuously disclose how much and how soon the interest rate (and, therefore, the monthly payment) would increase after the initial rate expired; (2) failing to clearly and conspicuously disclose whether stated monthly payments included amounts due for insurance and taxes, which they generally did not; (3) failing to clearly and conspicuously disclose closing costs and fees; (4) making false promises that Defendants would refinance the loan prior to a rate increase and would waive the prepayment penalty costs; (5) failing to disclose the true costs and risks associated with the false promise that refinancing would be available as an exit strategy when the Defendants loan became unaffordable after the interest rate adjusted; (6) fraudulently promising that the value of the property would increase and therefore the

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

7

Plaintiff could easily refinance their property even if they took a loan out at a 100% loan-to-value ratio; (7) steering Plaintiff away from safer, fixed rate, prime loans that they could afford and towards risky, subprime ARMs in order to maximize their fees and profits; and (8) other fraudulent advertisement and acts that were designed to mask the true costs and risks of the loans and to hide the benefits of other, safer, loan products.

26.    The Defendants knew or should have known that Plaintiff's loan may result in foreclosure, particularly in light of their qualification of Plaintiff's ability to pay based only on their ability to pay a the initial rate, and their reliance on serial refinancing, which in turn relied on a false assumption of perpetual home price appreciation. Defendants' lack of underwriting standards also contributed to the inability of the Plaintiff to pay following the initial rate period by neglecting to adequately review borrowers financial and employment documentation.

27.    In addition to their unfair, deceptive, and discriminatory loan origination practices, Defendants have also engaged in unfair or deceptive practices in servicing the loans they made to Plaintiff, including: (1) failing to accurately credit Plaintiff's payments to Plaintiff's accounts; (2) assessing and demanding substantial, unwarranted costs and fees under threat of foreclosure; (3) pressuring Plaintiff facing imminent foreclosure to enter into reinstatement or other contracts with oppressive terms, without an adequate opportunity to consult legal counsel; and (4) demanding exorbitant reinstatement amounts, including fees and costs that are neither bona fide nor reasonable.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

I.  **DEFENDANTS LOANS ARE STRUCTURALLY UNFAIR, DESIGNED TO BE DIFFICULT TO UNDERSTAND DUE TO THEIR MULTIPLE LAYERS OF RISK AND TOOK NO MEANINGFUL CONSIDERATION** *OF WHETHER PLAINTIFFS COULD AFFORD TO PAY THE LOANS.*

28.  Defendants' business model generated a variety of aggressive, exceedingly risky, and unfair loan products reflecting Defendants indifference to whether Plaintiff could afford its loans. Specifically, Defendants, through its sales representatives and the mortgage brokers it contracted with, induced Plaintiff into purchasing a residential loan products that Defendants knew or should have known may result in foreclosure, absent serial refinancing into even higher cost loans.

29.  As discussed further below, Defendants loan proposals to Plaintiff included:

  a.  100% financing where Defendants would approve a loan arrangement that provided one loan for 80% and another "piggyback loan" for 20% of the purchase price.

  b.  ARM features consisting of a lower fixed interest rate for a short-term period, which would be followed by an increase to a higher, adjustable rate (calculated by adding points ("spread") to an interest rate index), which then could further increase every six months for the remaining years.

  c.  ARM features combined with a "stated income", "low doc" or "no doc" features, where Plaintiff needed to only state his income and assets, without providing any documentation, to obtain a loan.

30.  Defendant and the mortgage brokers selling its products approved Plaintiff for these ARM loans based only on the initial fixed rate, without regard to Plaintiff's ability to pay after the initial lower rate period. Even though Defendant knew that once the initial period ended, there would be a substantial and likely unaffordable monthly payment increase, was an

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

9

expected result of its ARM loans, Defendant and its brokers selling this loan to Plaintiff its loans failed to meaningfully account for those payment adjustments in approving and selling loans and thereby failed to meaningfully account for borrowers ability to repay the Defendants loans. Typically, Defendants viewed this loan as a short-term loan that would require serial refinancing before the loan adjusted which increased fees and revenue for the Defendants. However, Defendants and the brokers failed to meaningfully disclose the interest rate increases inherent in the RML and impact it would have on the monthly payments and Plaintiff's ability to pay the loans. If any statements were made by the Defendants in connection with these costs, they were usually about the ease in which refinancing would be available, the increase of property value, the waiver of prepayment penalties, and other fraudulent claims designed to induce the borrower to sign the loan.

31.     Starting with the predictable risks inherent in ARM loans, underwriting those loans based only on the introductory-rate period, and failing to meaningfully disclose to Plaintiff the terms and risks of the ARM loans, Defendants then added additional layers of risk to the loan product it approved and sold to Plaintiff. These additional layers of risk, each of which is common to Defendants loans, include, without limitation:

    a. "No doc", "low doc" or "stated income" loans, that is, approving Plaintiff without considering or verifying the relevant documentation related to the borrowers credit qualifications, including the Plaintiff's income, assets, and employment;

    b. Approving a loan that contained features that are known to require prompt refinancing to maintain an affordable monthly payment and avoid defaults or foreclosure;

c. Including substantial prepayment penalties that, at times, frequently last beyond the introductory fixed rate period, thereby penalizing Plaintiff who was encouraged to refinance his loans once the introductory rate adjusts;

d. Approving Plaintiff who had inadequate debt-to-income ratios that did not properly consider Plaintiff's ability to meet their overall level of indebtedness and common housing expenses in excess of 50% of monthly earnings; and/or

e. Failing to accurately and meaningfully disclose to Plaintiff that monthly loan payments do not include additional costs such as property taxes and insurance;

f. Urging Plaintiff to encumber Plaintiff's home up to 100% or more of the assessed value;

g. Placing Plaintiff in a "piggyback" second mortgage in the form of higher interest rate home equity lines of credit ("HELOCs") while obscuring the total monthly payment obligations and the amount available to them on them;

h. Enticing Plaintiff into accessing their homes equity using "HELOCs" with teaser introductory rate periods and forcing borrowers to borrow a minimum percentage of the homes equity thereby accelerating the need for multiple refinancing of debt obligations

32. Defendant failed to explain and/or disclose in a meaningful manner the terms and conditions of their loan products and instead provided Plaintiff with incomplete or confusing information relative to product features, material loan terms and product risks, prepayment penalties, and the borrowers obligations for property taxes and insurances. In particular, Defendants brokers encouraged Plaintiff not to worry about most loan terms, especially upward adjusting interest rates and prepayment penalties, because Defendants brokers would arrange a

new loan prior to the ARM adjustment without regard to future property values, economic states, or borrowers employment stability. Defendants also exacerbated the predictable harm inherent in these multiple-risk layered ARM products by combining these terms with 100% financing.

33.    Combined, these activities caused over inflation the value of property which would further increase Defendant's bottom lines at a cost to the Plaintiff.

## II.    DEFENDANTS ENCOURAGED MORTGAGE BROKERS UNFAIR AND DECEPTIVE CONDUCT BY REWARDING BROKERS WHO SOLD RISKY AND INAPPROPRIATE LOAN PRODUCTS WITH LITTLE OR NO DOCUMENTATION AND PROVIDED NO MEANINGFUL OVERSIGHT OF BROKERS CONDUCT WITH RISK LACED INCENTIVES.

34.    Defendants further exacerbated the unfair and deceptive loans described above by relying on third party mortgage brokers to sell its loans. Defendants induced and rewarded these mortgage brokers to originate unduly risky, inappropriate, and in some cases, fraudulent, loans while failing to monitor these brokers' sales and underwriting conduct in a meaningful way.

35.    Driven by its push for market share, Defendants did whatever it took to sell more loans, faster – including easing its underwriting criteria and disregarding minimal oversight of mortgage brokers. By easing and disregarding its underwriting criteria, Defendants increased the risk that Plaintiff would lose his home.

36.    For example, Defendants, mortgage brokers, and their agents eased their underwriting standard by allowing low and no documentation loans. Traditionally, lenders required borrowers seeking mortgage loans to document their income by providing W-2's or tax returns or other documents such as bank statements, asset statements, and pay stubs. In addition Defendants, however, disregarded such documentation requirements with respect to its riskiest loan products and introduced a variety of reduced or no documentation loan programs that eased and quickened the loan origination process. Further, they would allow Stated Income Stated

Assets "SISA" programs where a borrower's income and assets were stated but not verified at 100% loan to value.

37.    These low and no documentation programs, such as SISA, enabled Defendants and their brokers to process loans more quickly and therefore to originate more loans. Stated income loans also encouraged the overstating of income – loan brokers and officers either overstated the Plaintiff's income without his or her knowledge, or led the Plaintiff into overstating his or her income without explaining the risk of default that the Plaintiff would face with a loan and monthly fees he or she could not actually afford.

38.    Defendants and their brokers also relaxed traditional underwriting standards used to separate acceptable from unacceptable risk in order to produce more loans for the secondary market. Initially, the depth of credit and thereby worthiness of the Plaintiff played a crucial role in determining whether Plaintiff could get a loan. However, as the pursuit of profits became the primary goal of Defendants, the credit score itself became most important with disregard for the Plaintiff's future ability to pay based on previous payment habits. Further, Defendants and their brokers began disregarding the importance of loan-to-value ratios, debt-to-income ratios, and other factors designed to protect Plaintiff and Plaintiff's ability to pay within their means for the entire lifetime of the RML.

39.    Due to the fact that riskier and higher loan amounts would produce a greater financial reward to Defendants, they encouraged and incentivized brokers to focus on producing only those loans. Part of this structure was higher commission and other incentives to mortgage brokers who provided large and risky loans. In return, the Defendants passed on the excess compensation to the borrower by way of increased origination fees, higher interest rates, longer prepayment penalty periods, or larger credit spreads above the index value on ARMs.

40.    To further encourage brokers and agents to bring in more RML's, Defendants provided little to no oversight of brokers conduct. As long as brokers provided loans that Defendants could sell to the secondary market, Defendants had the financial incentive to continue receiving loans regardless of the documentation, or lack thereof, on the RML's.

41.    Also, to further the deceptive scheme, Defendants created a high-pressure sales environment that propelled its mortgage brokers to meet high production goals and close as many loans as they could without regard to Plaintiff's ability to repay. Defendants high-pressure sales environment also propelled mortgage brokers to sell the riskiest types of loans, such as payment option and hybrid ARMs, because mortgage brokers could easily sell them by deceptively focusing Plaintiff's attention on the low initial monthly payments or interest rates thereby not disclosing the true financing cost of the loan. This system of compensation aided and abetted brokers in breaching their fiduciary duties to Plaintiff by inducing Plaintiff to accept unfavorable loan terms without full disclosure of the Plaintiff's options and also compensated brokers beyond the reasonable value of the brokerage services they rendered.

## SPECIFIC ALLEGATIONS

42.    Plaintiff Lee originally purchased the subject property on April 02, 2007.

43.    Defendant FFFC took first and second position on the Subject Property creating a loan valued at 80% of the property value and a loan valued at 20% of the property value respectively.

44.    The loan taking first position is a 2-year fixed period, amortized over 50 years, due in 30 years, with a 2-year pre-payment penalty for $552, 248.00 at 8.2%.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

14

45.    The loan taking the second position is a fixed rate balloon payment due in 15 years, for $138,062.00 at 12.3%.

46.    Defendants filed a Notice of Default on Plaintiff's home on or about June 05, 2008.

47.    Plaintiff entered into a Repayment Plan Agreement but did not follow through on the agreement due to its unfair provisions. For example, by adhering to the terms of the agreement the loan would, nevertheless, remain delinquent, late charges will continue to accrue and credit reporting showing the delinquency will continue.

48.    Plaintiff is not able to refinance the Subject Property because of the prepayment penalty described above.

49.    Plaintiff was induced to enter into a loan under the facts and circumstances alleged in this complaint and said allegations are further incorporated herein by reference as though fully stated herein.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF BUSINESS AND PROFESSIONS CODE SECTION 17200, ET. SEQ.
## (AS TO ALL DEFENDANTS)

50.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

51.    Defendants have violated and continue to violate Business and Professions Code section 17200, et. seq. making untrue or misleading statements, or by causing untrue or misleading statement to be made, with the intent to induce Plaintiff into entering into the RML which are the subject of this Complaint. These untrue and misleading statements include but are not necessarily limited to:

    a.  Statements that Defendants were mortgage loan experts that could be trusted to help Plaintiff close his short sale and avoid foreclosure in a manner and for an amount that are consistent with market conditions;

    b.  Statements regarding the terms and payment obligations, including statements of the duration of the original payment, duration and amount of the interest rate, and statements obfuscating the risks of the loan;

    c.  Statements regarding the prepayment penalty, including that the loan had no prepayment penalty or that the prepayment penalty could be easily waved;

    d.  Statements that the home value would continue to rise and that Plaintiff could refinance quickly;

    e.  Defendants falsely stated to Plaintiff that it did not make any payments of kickbacks, fees or other "things of value" in violation of RESPA.

52.    Defendants failed to consider Plaintiffs' ability to repay his mortgage and failed to disclosure the cost of this mortgage as required by the Truth in Lending Act.

53.    Defendants knew or by the exercise of reasonable care should have known, that these statements or omissions were untrue or misleading at the time they were made.  Defendants actions stated herein are in violation of Business and Professions Code Section 17200 et. seq. and are have caused Plaintiff damage in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below;

**SECOND CAUSE OF ACTION**
**VIOLATION OF CIVIL CODE SECTION 2923.5**
**(As to All Defendants)**

54.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

55.    California Civil Code Section 2923.5 requires Defendants to file a declaration that they complied with this code section prior to filing a notice of default.  Defendants failed to make contact with Plaintiff by personal contact, by phone and failed to perform the due diligence required by the statute.   Defendants further failed to make a proper declaration required under Civil Code Section 2923.5.

56.    As a result of their violation of Civil Code Section 2923.5, Defendants have damaged Plaintiff to the extent that it has clouded title by recording a Notice of Default against the subject property and the amount of said damages are in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below;

### THIRD CAUSE OF ACTION
### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT OF 1974
### (12 USC §2601)
### (AS TO ALL DEFENDANTS)

57.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

58.    Defendants have violated the RESPA by engaging in prohibited acts as set forth in this complaint, including but are not necessarily limited to:

a.    Statements regarding the terms and payment obligations, including statements of the duration of the original payment, duration and amount of the interest rate;

b. Statements regarding the prepayment penalty, including that the loan had no prepayment penalty or that the prepayment penalty could be easily waved by making payments of kickbacks, fees or other "things of value".

59.  Defendants knew or by the exercise of reasonable care should have known, that these Statements, acts or omissions were unlawful.  Defendants actions stated herein are in violation of the Real Estate Procedures Act of 1974 (RESPA) and have caused Plaintiff damage in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below;

## FOURTH CAUSE OF ACTION
## VIOLATION OF TRUTH IN LENDING ACT (12 CFR §226)
### (AS TO ALL DEFENDANTS)

60.  Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

61.  Defendants have violated the Truth in Lending Act by engaging in prohibited acts as set forth in this complaint, including but are not necessarily limited to:

a. Defendants failed to examine Plaintiffs current and expected  "Repayment Ability";

b. Failed to clearly and conspicuously disclose Plaintiff key provisions of Plaintiff's mortgage, including but not limited to such details as the eventually reset interest rate, specific loan terms, and the total dollar amount the mortgage will cost over time.

62.  Defendants knew or by the exercise of reasonable care should have known, that these Statements, acts or omissions were unlawful.  Defendants actions stated herein are in

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

violation of the Truth in Lending Act (TILA) and have caused Plaintiff damage in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below;

## FIFTH CAUSE OF ACTION
## FRAUD
## (AS TO ALL DEFENDANTS)

63.     Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

64.     Defendants represented to Plaintiff that all the statements made to him in the origination of the RML were true and that the value of the Subject Property which supported the loan was also true. Defendants' representations were false and Defendants knew they were false and made such representations without regard to their truth.

65.     When Defendants made their false representations relating to the terms and conditions of the loan and of the value of the property Defendants made with the intent that Plaintiff would rely on them and sign the loan documents and secure the Subject Property for said loan.

66.     Defendants represented themselves as loan experts and represented their employees or third parties such as the appraiser as experts in the field. Plaintiff relied on Defendants' representations and said reliance was reasonable due to Defendants advertisement, assertions, and experience in the mortgage industry.

67.     Furthermore, Defendants action were intentional, oppressive, and with fraud or malice in conscious disregard of plaintiff's consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

68.     Defendant's fraud has caused Plaintiffs damage in an amount to be determined at a trial. At a minimum, it includes the irreparable harm to Plaintiffs credit score and the amount overpaid to Defendants on the fraudulently obtained RML on the Subject Property.

WHEREFORE, Plaintiff prays for judgment as set forth below;

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (AS TO ALL DEFENDANTS)

69.     Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

70.     As mentioned previously, Plaintiff and Defendants had negotiated a RML. As part of these negotiations, Defendants had a duty to refrain from breaching the implied covenant of good faith and fair dealing.

71.     However, during the negotiations, Defendants negotiated for terms such as a prepayment clause with the promise that the clause would be waived in the future at the time of a refinance. These terms were designed to give Defendants an unfair advantage over Plaintiff and therefore further induce the Plaintiff to refinance the RML in the future or be unable to make payments and stay in the home. By negotiating for these conditions, the Defendants breached the implied covenant of good faith and fair dealing.

72.     Due to the Defendants breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered severe financial hardship. Plaintiff has been damaged in the amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

### SEVENTH CAUSE OF ACTION
### CONVERSION
### (AS TO ALL DEFENDANTS)

73. Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

74. As mentioned previously, the Defendants induced the Plaintiff to agree to the RML through fraud, deceit, and unfair business practices in violation of California law. Further, the Defendants set an unjustly high monthly payment by artificially inflating the value of the property to fraudulently justify a larger mortgage.

75. By raising the monthly payment rate, the Defendants extracted from the Plaintiff a higher amount than the Plaintiff legitimately shouldn't have paid. Further, as required by Defendants own policies, any payments made in excess of the amount owed should be applied directly to the principle of the account. The Defendants violated the RML contract and their own policies by applying the extra payments to interest that was not legitimately owed by the Plaintiff. The Defendants improperly converted said funds of Plaintiff for their own use and benefit, thereby making more fraudulent risk adverse loans to unsuspecting borrowers.

76. Through Defendants wrongful acts, the Plaintiff was told by the Defendants that Plaintiff would be required to pay exorbitantly high monthly payments or face irreparable harm to be done through negative credit reporting and foreclosure on Plaintiff's house.

77. Furthermore, Defendants actions were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

78. Due to the Defendants conversion, Plaintiff has suffered severe financial hardship. Plaintiff has been damaged in the amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below;

## EIGHTH CAUSE OF ACTION
## QUIET TITLE
## (AS TO ALL DEFENDANTS)

79.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

80.    At all times herein, Defendants committed acts of misrepresentations and fraud as to the terms of the loan, mortgage, and sale of the property with the intent to exert undue influence.

81.    Plaintiff was under unfair persuasion amounting to undue influence because the parties were involved in a fiduciary relationship in which the Plaintiff was justified in assuming that the Defendants would not act in a manner inconsistent with Plaintiff's welfare and best interests.

82.    At all times herein, Defendants gained unfair persuasion and undue influence by improper means including but not limited to misrepresentations, undue flattery, and fraud.

83.    Due to Defendants undue influence, they received a deed of trust to the property for a loan that Plaintiff should not have given or been allowed to take.  This loan would not have taken place but for Defendants wrongful conduct.

84.    Furthermore, Defendants action were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

85.    Due to the Defendants undue influence, Plaintiff has suffered severe financial hardship and was forced to give a deed of trust to the Defendants.  Plaintiff has been damaged in

the amount to be proven at trial. Second, the Plaintiff requests that the court invalidate the deed of trust on the property.

WHEREFORE, Plaintiff prays for judgment as follows;

### NINTH CAUSE OF ACTION
### FRAUD IN THE INDUCEMENT
### (AS TO ALL DEFENDANTS)

86.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

87.    In order to induce the Plaintiff to agree to the RML, the Defendants made a series of fraudulent promises. These promises include but are not limited to statements about the increase of value of the property, the ease that refinancing would occur, the monthly payments and interest rate.

88.    Plaintiff reasonably relied on Defendants promises due to the fact that they were mortgage brokers who were presented as experts in the field and that they were bound by a fiduciary obligation to the Plaintiff.

89.    Furthermore, Defendants action were intentional, oppressive, and with fraud or malice in conscious disregard of plaintiffs consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

90.    Defendants fraud has caused Plaintiffs damage in an amount to be determined at a trial. At a minimum, it includes the irreparable harm to Plaintiffs credit score and the amount overpaid to Defendants on the fraudulently obtained RML on the Subject Property.

WHEREFORE, Plaintiff prays for judgment as set forth below;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

23

## TENTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES
### (AS TO ALL DEFENDANTS)

91.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

92.    Defendants' fraudulent acts, business model, and change of underwriting standards were designed to create an environment of unfair business practices in which Defendants could wrongfully profit.  These actions included artificially raising the value of the home in order to allow for a larger loan to maximize the Defendants profits.  Further, Defendants false promises and statements were designed to unfairly prejudice Plaintiff and profit from Plaintiff's loss.

93.    Furthermore, Defendants actions were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

94.    Due to the Defendants unfair business practices, Plaintiff has suffered severe financial hardship.  Plaintiff has been damaged in the amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below;

## ELEVENTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### (AS TO ALL DEFENDANTS)

95.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

96.    Under California law, mortgage brokers have a fiduciary duty to their clients.  In this case, the Defendants have a fiduciary obligation to Plaintiff.  This obligation requires that

the Defendants have a duty of care, loyalty, candor and a responsibility to put the interest of the Plaintiff before the Defendants.

97.    By the acts, transactions and courses of conduct alleged herein, Defendants unfairly deprived Plaintiff of the true value of Plaintiff's home.

98.    As demonstrated by the allegations above, defendants breached their fiduciary obligation to the Plaintiff by, and not limited to, these following reasons:

　　a.  Defendants fraudulent advertisement was designed to entice the Plaintiff to accept risky RML's when there were better options;

　　b.  Defendants lowered their underwriting standards in order to maximize their profits without any consideration of Plaintiff's ability to pay;

　　c.  Defendants policy of pushing high risk ARMs that was in the long run against Plaintiff's best interest but benefited the Defendants;

　　d.  Defendants also received a secret profit in this transaction and a higher profit for higher risk, larger loans that was not disclosed to the Plaintiff;

　　e.  Defendants actively sought to inflate the property value through a variety of means and therefore increasing the amount of the loan and the amount that the Plaintiff would be obligated to pay.

99.    Furthermore, Defendants action were intentional, oppressive, and with fraud or malice in conscious disregard of plaintiff's consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

100.    Due to the Defendants breach of their fiduciary obligations, Plaintiff has suffered severe financial hardship.  Plaintiff has been damaged in the amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## TWELFTH CAUSE OF ACTION
## DEFAMATION
## (AS TO ALL DEFENDANTS)

101.   Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

102.   In an attempt to coerce payment out of the Plaintiff in regards to the fraudulently obtained RML, the Defendants threatened and actually reported to credit agencies and other third parties that Plaintiff was in default on the RML for a payment that was incorrectly assessed.

103.   Defendants knowingly made these statements with full knowledge of Defendants wrongful and fraudulent conduct and the Defendants were full aware that the RML was obtained illicitly. Even with the knowledge of their wrongful acts and illegally obtained RML, the Defendants still made false statements about the amount that the Plaintiff owed and did not pay to third parties in an attempt to defame Plaintiff's reputation and lower the credit score.

104.   Furthermore, Defendants action were intentional, oppressive, and with fraud or malice in conscious disregard of plaintiff's rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

105.   Due to the Defendants defamation, Plaintiff has suffered severe financial hardship. Plaintiff has been damaged in the amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below;

## THIRTEENTH CAUSE OF ACTION
## WRONGFUL FORECLOSURE
## (AS TO ALL DEFENDANTS)

106.   Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

107.   Plaintiff requests that the foreclosure proceedings be stopped because Defendant's reprehensible conduct throughout this transaction provides grounds for wrongful foreclosure.

108.   Defendants had no right to foreclose at the time foreclosure proceedings were commenced.  The RML was obtained by Defendants as a result of fraud, material misrepresentations and numerous false statements made by Defendant and its employees and agents in the loan origination process.  Due to the fraud and other wrongful acts by the Defendants, there was no valid RML on the property and therefore, no possibility of default to give rise to a foreclosure by the Defendants

109.   Defendants notice of default was defective and in violation of Civil Code Section 2924.

110.   Defendants notice of sale was defective and in violation of Civil Section 2924.

111.   Furthermore, Plaintiff has the right to claim that the foreclosure is wrong because the amount stated as due and owing in the notice of default is incorrect for the following reasons: an incorrect interest rate adjustment, incorrect tax impound accounts, and misapplied payments.

112.   Defendants have overcharged Plaintiff for interest on an overvalued property. This debt amount was improperly overstated.  On this improperly overstated debt Plaintiff overpaid interest to Defendant in an amount to be determined at trial.

113.   Plaintiff has been substantially harmed by his reliance on Defendants representations and will be further harmed by wrongful foreclosure in an amount to be proved at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below;

## FOURTEENTH CAUSE OF ACTION
## CIVIL CONSPIRACY

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

27

<u>(As to All Defendants)</u>

114. Plaintiffs realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

115. Defendants, and each of them, agreed to form and operate a business relationship wherein the originator of the loan would process the loan application in a manner that each defendant knew or should have know was malicious, wrongful, and unlawful for the reasons stated in this complaint. The business relationship between the parties gave the originator of the loan the right to assign, sell or otherwise transfer said unlawfully originated loan to its fellow defendants, which each defendant would, in turn, acquire the right to sell, assign or otherwise transfer for a profit.

116. As a result of this conduct, Defendants, and each of them, damaged Plaintiff in an amount to be proven at trial.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

### FIFTEENTH CAUSE OF ACTION
### AIDING AND ABETTING
### <u>(As to all Defendants)</u>

117. Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

118. Defendants, and each of them, knew of the conduct of the other. Defendants and each of them knew that the Defendants originating and processing the subject loan in the manners alleged and fully described in this complaint. Said Defendants knew that the Defendant that originated the loan in with deceptive and unlawful acts and practices as alleged herein. In addition to the knowledge each Defendant had as to the conduct of the other,

each Defendant gave substantial assistance and encouragement to each other in the performance of said deceptive and unlawful.   Defendants, and each of them, profited from said conduct.

119.  As a result of this conduct, Defendants, and each of them, damaged Plaintiff in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below;

<u>SIXTEENTH CAUSE OF ACTION</u>
<u>UNLAWFUL JOINT VENTURE</u>
<u>(As to all Defendants)</u>

120.  Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

121.  Defendants, and each of them, entered into an agreement to originate, purchase, assign, sell and otherwise transfer the subject mortgage loan between themselves and others for a profit.   The agreement between the Defendants, and each of them, was formed and agreed to with the intent to originate, purchase, assign, sell and otherwise transfer the subject mortgage loan between themselves and others for a profit.  Defendants, and each of them, contributed their property, financing, skill, knowledge or effort in furtherance of this agreement.  Defendants, and each of them, exercised control over the execution of the agreement, and each party knew the amount of profit margin would be made on the sale, assignment or other transfer of the subject mortgage loan.

122.  As a result of this conduct, Defendants, and each of them, damaged Plaintiff in an amount to be proven at trial.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

29

WHEREFORE, Plaintiffs prays for judgment as set forth below;

### SEVENTEENTH CAUSE OF ACTION
### INJUNCTIVE RELIEF
### (AS TO ALL DEFENDANTS)

123.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

124.    On June 06, 2008, Defendants filed a notice of sale in order to wrongfully foreclose on the property.

125.    As permitted by CCP §526(1), the Plaintiff Lee has made several clear and convincing causes of actions in which the Plaintiff is likely to succeed. Those arguments, including arguments for fraud, breach of fiduciary duty, unfair business practices, and others, are factually supported and are likely to lead to a decision in favor of Lee. On this ground alone, the court may grant the temporary restraining order as permitted under CCP section 526(1).

126.    Defendants threatened wrongful conduct to sell the property to a third party, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to plaintiff by the forced sale of the property. Further, any forced sale of the property will reduce the value of the property and jeopardize Plaintiffs interest in the property. On this ground alone, the court may grant the temporary restraining order as permitted under CCP section 526(2).

127.    Plaintiff has no adequate remedy at law for the injuries that are threatened as a foreclosure and forced sale would wrongfully deprive Plaintiffs of their property rights and reduce their equity interest in the property. On this ground alone, the court may grant the temporary restraining order as permitted under CCP section 526(4).

128.    If Defendants are allowed to sell the foreclosed property, Plaintiffs would be required to file a separate suit to reverse the sale of the foreclosed property. This would lead to a multiplicity of judicial actions. On this ground alone, the court may grant the temporary restraining order as permitted under CCP section 526(6).

129.    As a proximate result of Defendants wrongful conduct, Plaintiffs equity interest and potential sale has been totally lost. Plaintiffs will be further damaged if Defendant is allowed to proceed with the sale of the foreclosed property. The full amount of this damage is not now known to plaintiff, and plaintiff will amend this complaint to state this amount when it becomes known to them or on proof of the damages.

WHEREFORE, Plaintiff prays for judgment as set forth below:

**AS TO ALL CAUSES OF ACTION PLAINTIFF PRAYS FOR JUDGMENT AS FOLLOWS:**

1.    Pursuant to Business and Professions Code section 17200, et. seq., that all Defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert with them be permanently enjoined from making any untrue or misleading statements or falsely reporting negative credit to reporting agencies, and selling the foreclosed property on an unlawfully procured debt in violation of Business and Professions Code section 17200, et. seq.

2.    Pursuant to Business and Professions Code section 17200, et. seq., that the Court make such orders or judgments as may be necessary to prevent the use or employment by any Defendant of any practices which violate section 17200, et. seq. of the Business and Professions Code, or which may be necessary to restore to any

person in interest any money or property, real or personal, which may have been acquired by means of any such practices.

3. Pursuant to Business and Professions Code section 17200 et. seq., that this court make such orders or judgments as may be necessary to prevent the use of employment by any Defendant of any practice which constitutes an unfair business practice or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unlawful actions.

4. Damages sustained by the Plaintiff due to Defendants wrongful acts in excess of the jurisdictional limits in an amount to be proven at trial;

5. For rescission;

6. For interest on the sum at the rate of 10% per annum;

7. For punitive damages against Defendants due to their intentional and wrongful acts;

8. That Plaintiff recover reasonable attorneys fees and for to recover its costs of suit;

9. For such other relief that the Court deems just, proper, and equitable.

DATED: January 14, 2009                    **The Litigation Law Group**


BY _____
   Lawrence P. Ramirez
   ATTORNEY FOR PLAINTIFF

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

32

Wolfe & Wyman LLP
EXHIBIT "**B**"

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| LAWRENCE P. RAMIREZ, ESQ.     141550<br>THE LITIGATION LAW GROUP<br>111 NORTH MARKET STREET, SUITE 1010<br>SAN JOSE, CA 95113 | |

TELEPHONE NO.: (408) 971-1119     FAX NO. *(Optional):* (408) 971-1129

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* PLAINTIFF

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN JOAQUIN

STREET ADDRESS: 222 E. WEBER AVENUE

MAILING ADDRESS: 222 E. WEBER AVENUE

CITY AND ZIP CODE: STOCKTON, CA 95202

BRANCH NAME: STOCKTON COURTHOUSE

PLAINTIFF/PETITIONER: EMMA LEE

DEFENDANT/RESPONDENT: FIRST FRANKLIN FINANCIAL CORPORATION, ET AL.

| **PROOF OF SERVICE OF SUMMONS** | CASE NUMBER:<br>39-2009-00202104-CU-FR-STK |
|---|---|
| | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☒ summons
   b. ☒ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents)*: NOTICE OF CASE MANAGEMENT CONFERENCE; NOTICE OF CASE ASSIGNMENT AND SCHEDULING INFORMATION AND NOTICE OF HEARING; NOTICE OF PENDENCY OF ACTION (LIS PENDENS)

3. a. Party served *(specify name of party as shown on documents served)*:
   FIRST FRANKLIN FINANCIAL CORPORATION, A DELAWARE CORPORATION

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   VIVIAN IMPERIAL, AGENT FOR SERVICE OF PROCESS

4. Address where the party was served:
   CT CORPORATION SYSTEM
   818 WEST SEVENTH STREET, LOS ANGELES, CA 90017

5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 01/28/2009     (2) at *(time)*: 2:45PM
   b. ☐ **by substituted service.** On *(date)*:   at *(time)*:   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:   from *(city):*   or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007]

Martin Dean's<br>ESSENTIAL FORMS™

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

39-2009-00202104-CU-FR-STK

PLAINTIFF/PETITIONER: EMMA LEE        CASE NUMBER:

DEFENDANT/RESPONDENT: FIRST FRANKLIN FINANCIAL CORPORATION,     39-2009-00202104-CU-FR-STK

5.    c.   ☐   **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

      (1)   on *(date)* :             (2)   from *(city)* :

      (3)   ☐   with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.) *(Code Civ. Proc., § 415.30.)*

      (4)   ☐   to an address outside California with return receipt requested. *(Code Civ. Proc., § 415.40.)*

   d.   ☐   **by other means** *(specify means of service and authorizing code section):*

      ☐   Additional page describing service is attached.

6.   The "Notice to the Person Served" (on the summons) was completed as follows:

   a.   ☐   as an individual defendant.

   b.   ☐   as the person sued under the fictitious name of *(specify)* :

   c.   ☐   as occupant.

   d.   ☒   On behalf of *(specify)* :   FIRST FRANKLIN FINANCIAL CORPORATION, A DELAWARE CORPORATION

      under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.   **Person who served papers**

   a.   Name: RICHARD GARI

   b.   Address: 111 N. MARKET STREET, SUITE 125, SAN JOSE, CA 95113

   c.   Telephone number: (408) 295-2700

   d.   **The fee** for service was: $

   e.   I am:

      (1)   ☐   not a registered California process server.

      (2)   ☐   exempt from registration under Business and Professions Code section 22350(b).

      (3)   ☒   registered California process server:

          (i)   ☐ owner    ☐ employee    ☒ independent contractor.

          (ii)   Registration No.: 4047

          (iii)   County: LOS ANGELES

8.   ☒   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      or

9.   ☐   **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 01/28/2009

RICHARD GARI                ►                                

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                             (SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| LAWRENCE P. RAMIREZ, ESQ.          141550<br>THE LITIGATION LAW GROUP<br>111 NORTH MARKET STREET, SUITE 1010<br>SAN JOSE, CA 95113<br>TELEPHONE NO.: (408) 971-1119  FAX NO. *(Optional):* (408) 971-1129<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* PLAINTIFF | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN JOAQUIN
STREET ADDRESS: 222 E. WEBER AVENUE
MAILING ADDRESS: 222 E. WEBER AVENUE
CITY AND ZIP CODE: STOCKTON, CA 95202
BRANCH NAME: STOCKTON COURTHOUSE

| PLAINTIFF/PETITIONER: EMMA LEE | CASE NUMBER:<br>39-2009-00202104-CU-FR-STK |
|---|---|
| DEFENDANT/RESPONDENT: FIRST FRANKLIN FINANCIAL CORPORATION, ET AL. | |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☒ summons
   b. ☒ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents):* NOTICE OF CASE MANAGEMENT CONFERENCE; NOTICE OF CASE ASSIGNMENT AND SCHEDULING
   INFORMATION AND NOTICE OF HEARING; NOTICE OF PENDENCY OF ACTION (LIS PENDENS)

3. a. Party served *(specify name of party as shown on documents served):*
   CAL-WESTERN RECONVEYANCE CORPORATION, AS TRUSTEE

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
   under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   DENA LAPORTA, AGENT FOR SERVICE OF PROCESS

4. Address where the party was served:
   NATIONAL REGISTERED AGENTS, INC.
   2875 MICHELLE DRIVE, SUITE 100, IRVINE, CA 92606

5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
   receive service of process for the party (1) on *(date):* 01/29/2009      (2) at *(time):* 10:00AM
   b. ☐ **by substituted service.** On *(date):*      at *(time):*      I left the documents listed in item 2 with or
   in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
   of the person to be served. I informed him or her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
   place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
   address of the person to be served, other than a United States Postal Service post office box. I informed
   him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
   at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
   *(date):*      from *(city):*      or ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | *Martin Dean's*<br>**ESSENTIAL FORMS**™ | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|---|

PLAINTIFF/PETITIONER: EMMA SILER

DEFENDANT/RESPONDENT: FIRST FRANKLIN FINANCIAL CORPORATION,

CASE NUMBER:
39-2009-00202104-CU-FR-STK

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
    (1) on *(date)* :                  (2) from *(city)* :
    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)
    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section)*:

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify)* :
  c. ☐ as occupant.
  d. ☒ On behalf of *(specify)*: CAL-WESTERN RECONVEYANCE CORPORATION, AS TRUSTEE
    under the following Code of Civil Procedure section:
      ☒ 416.10 (corporation)              ☐ 415.95 (business organization, form unknown)
      ☐ 416.20 (defunct corporation)         ☐ 416.60 (minor)
      ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
      ☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)
      ☐ 416.50 (public entity)             ☐ 415.46 (occupant)
                                    ☐ other:

7. **Person who served papers**
  a. Name: ROBERT RAFFONE
  b. Address: 111 N. MARKET STREET, SUITE 125, SAN JOSE, CA 95113
  c. Telephone number: (408) 295-2700
  d. **The fee** for service was: $
  e. I am:
    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☒ registered California process server:
      (i) ☐ owner   ☐ employee   ☒ independent contractor.
      (ii) Registration No.: 3285
      (iii) County: LOS ANGELES

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 01/29/2009

ROBERT RAFFONE
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
                                (SIGNATURE)